In re SOFORENKO.

(District Court, D. Massachusetts. July 28, 1913.)

No. 17,790.

1. BANKRUPTCY (§ 166*)—MORTGAGES—FRAUD—RIGHTS OF MORTGAGEE.

Where a bankrupt executed a mortgage on certain of his assets pursuant to a plan to prefer certain favored creditors with the proceeds of the loan and defraud his other creditors, the mortgagee, having advanced a present consideration for the mortgage, was entitled to enforce the same against the bankrupt's estate, unless he not only knew of the mortgagor's insolvency and his plan to prefer creditors, but also that the mortgagor intended after preferring such creditors to go into bankruptcy for the purpose of defrauding his other creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

2. BANKRUPTCY (§ 166*)—PREFERENTIAL PAYMENTS—PURPOSE.

Preferential payments made by an insolvent in the hope and for the purpose of continuing his business are not fraudulent, though they are under certain circumstances voidable by his trustee in bankruptcy, but preferential payments made by an insolvent who does not expect to continue in business, and who is endeavoring to provide for certain creditors at the expense of others, are fraudulent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Nathan Soforenko. On objections to the claim of one Seligman for priority under a mortgage executed by the bankrupt. Case recommitted to referee for additional findings.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Harvey H. Pratt, of Boston, Mass., for mortgagee.
Jacobs & Jacobs, of Boston, Mass., for trustee.

MORTON, District Judge. [1] It is clear that Soforenko was deeply insolvent and knew it, and that he and Levis, his manager, were engaged in an attempt to defraud the former's creditors by realizing as much as possible upon Soforenko's property, distributing the proceeds among a few favored persons, and having Soforenko go through bankruptcy to escape his other debts. The mortgage in question was given in pursuance of this plan, and was therefore an incumbrance, made by the bankrupt with the intent and purpose of hindering and defrauding his creditors, and as such is void against creditors, unless taken in good faith and for a present fair consideration. Bankruptcy Act, § 67e (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]).

That a "present fair consideration" was given by Seligman is not denied; his mortgage was not a preference. The referee has found:

"That Seligman, at the time of making the loan, knew or had reasonable cause to believe that Soforenko was insolvent; that the creditor (Seligman) knew or had reason to believe that the money he loaned was to be used in preferential payments to sundry creditors of Soforenko; and that the creditor Seligman was therefore party to Soforenko's intended fraud upon Soforenko's general creditors."

That Seligman had reasonable cause to believe that Soforenko was insolvent and was attempting to prefer certain creditors is not, it seems to me, enough to make Seligman "a party to Soforenko's intended fraud upon Soforenko's general creditors." If Seligman acted in actual good faith, though stupidly, his mortgage ought not to be set aside. Peabody v. Knapp, 153 Mass. 243, 26 N. E. 696. Even if Seligman knew that his loan was to be used in preferential payments, such knowledge would not invalidate his claim, unless he also knew that Soforenko, having preferred certain creditors, intended to go into bankruptcy to defeat his other creditors.

[2] Preferential payments made by an insolvent in the hope and for the purpose of thereby continuing his business are not really fraudulent, though they are under certain circumstances voidable by the trustee. A loan made with knowledge that it was to be so used would not be invalid. On the other hand, preferential payments made by an insolvent who does not expect to continue in business, who sees bankruptcy ahead, and who is endeavoring to provide for certain creditors at the expense of his general creditors, are fraudulent in any sense of the word, and a loan knowingly made to provide funds for such payments would be invalid. Tiffany v. Boatman's Sav. Institution, 18 Wall. 375, 21 L. Ed. 868; Coder, Trustee, v. Arts, 213 U. S 244, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008.

The question upon which the case turns is whether Seligman knew of the fraudulent scheme in which Soforenko and Levis were engaged, and made the loan and took the mortgage in order to assist them.

"Actual fraud in which the recipient of the lien or security participates is indispensable to the avoidance of a transaction of this nature." Sanborn, J., in Powell v. Gate City Bank, 178 Fed. 609, 102 C. C. A. 55; Coder, trustee,

v. Arts, 213 U. S. 240, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Re Pease, 129 Fed. 446; Tiffany v. Boatman's Sav. Institution, ubi supra; Collier on Bankruptcy (9th Ed.) pp. 956, 959.

"What we hold is that, to constitute a conveyance voidable under section 67e, actual fraud must be shown." Day, J., in Coder, Trustee, v. Arts, supra.

I am aware that there is high authority for the view taken by the referee (Dokken v. Page, 147 Fed. 438, 77 C. C. A. 674), but it seems to me that upon principle and upon weight of authority the law is otherwise.

Under the view of the law which I have taken, the referee's findings are not sufficient for the proper disposition of the case, because Seligman, though having reason to believe that the mortgage was for preferential purposes, may, upon these findings, have acted in good faith, or without knowledge that, besides preferences, bankruptcy was intended.

It may be that upon the facts in this case, from reason to believe that the mortgage was for a fraudulent purpose, to actual knowledge and co-operation, is a short step; that Seligman was neither stupid nor inexperienced, was likely to put two and two together, and, having done so, was not likely to have proceeded with the transaction unless he was an assisting party to the plan on foot; that, knowing Soforenko was realizing as quickly as possible as much as possible on everything he owned, Seligman saw through Soforenko's plan, and understood that bankruptcy was to be resorted to to get rid of the other creditors. Walbrun v. Babbitt, 16 Wall. 577, 21 L. Ed. 489. Some of the testimony suggests that he may have suspected what was afoot and purposely shut his eyes to the facts. Such collusive and intentional ignorance is the full equivalent of actual knowledge and notice. Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; Nudd v. Hamblin, 8 Allen (Mass.) 130.

On the other hand, it may be that Seligman was stupid and ignorant, and was an innocent dupe of Soforenko and Levis. These are important questions of fact which depend so largely upon the appearance and credibility of the witnesses that, although the evidence upon them is reported, they ought in the first instance at least to be passed upon by the referee before whom the matter was heard.

This case is recommitted to the referee to add to his findings of fact such further findings as are necessary for a decision in accordance with this memorandum.